IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER NIX,<br><br>             Petitioner,<br><br>     v.<br><br>JIM ROBINSON,<br><br>             Respondent. | No.  2:21-CV-0659-WBS-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

       Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court is Petitioner's first amended petition, ECF No. 7, and Respondent's answer, ECF No. 25.  Respondent has lodged relevant state court records, ECF No. 24.  Petitioner has not filed a traverse.

       Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  Under AEDPA, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in

/ / /

/ / /

/ / /

1  state court proceedings unless the state court's adjudication of the claim:

2      (1) resulted in a decision that was contrary to, or involved an unreasonable
3      application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4      (2) resulted in a decision that was based on an unreasonable determination
5      of the facts in light of the evidence presented in the State court proceeding.

6      Under § 2254(d)(1), federal habeas relief is available only where the state court's

7  decision is "contrary to" or represents an "unreasonable application of" clearly established law.

8  Under both standards, "clearly established law" means those holdings of the United States

9  Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549

10  U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the

11  Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th

12  Cir. 2008) (en banc). For federal law to be clearly established, the Supreme Court must provide a

13  "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at

14  76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators'

15  conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test

16  for determining prejudice created by state conduct at trial because the Court had never applied the

17  test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the

18  Supreme Court's holdings. See Carey, 549 U.S. at 74.

19      In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

20  majority of the Court), the United States Supreme Court explained these different standards. A

21  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

22  the Supreme Court on the same question of law, or if the state court decides the case differently

23  than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state

24  court decision is also "contrary to" established law if it applies a rule which contradicts the

25  governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate

26  that Supreme Court precedent requires a contrary outcome because the state court applied the

27  wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court

28  cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at

2

1  406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine
2  first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6
3  (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal
4  habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the
5  error had a substantial and injurious effect on the verdict or was harmless.  See id.

6  State court decisions are reviewed under the far more deferential "unreasonable
7  application of" standard where it identifies the correct legal rule from Supreme Court cases, but
8  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.
9  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested
10 that federal habeas relief may be available under this standard where the state court either
11 unreasonably extends a legal principle to a new context where it should not apply, or
12 unreasonably refuses to extend that principle to a new context where it should apply.  See
13 Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court
14 decision is not an "unreasonable application of" controlling law simply because it is an erroneous
15 or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,
16 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even
17 where the federal habeas court concludes that the state court decision is clearly erroneous.  See
18 Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper
19 deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.
20 As with state court decisions which are "contrary to" established federal law, where a state court
21 decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless
22 unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

23 The "unreasonable application of" standard also applies where the state court
24 denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d
25 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).   Such decisions
26 are considered adjudications on the merits and are, therefore, entitled to deference under the
27 AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982.
28 The federal habeas court assumes that state court applied the correct law and analyzes whether the

3

state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

# I. BACKGROUND

A. **Facts**[1]

The following facts are recited by the California Court of Appeal in its opinion on direct review affirming Petitioner's conviction and sentence, and Petitioner has not presented any clear and convincing evidence to rebut the presumption that these facts are correct. The Court of Appeal outlined the facts as follows:

> Hollingshead and Nix are brothers. In November 2013, Hollingshead's wife Jessicca got drunk and spent the night with Spalding. Looking for her, Hollingshead called the last phone number Jessicca had called and got Spalding's voicemail. Hollingshead found Spalding's address and drove there, honking his horn and calling Jessicca's name, but no one responded. The next day Hollingshead asked Jessicca about Spalding, and she admitted spending the night with him.
> Hollingshead sent the following text message to Spalding: "Brian, this is Jessicca's husband. What kind of piece of shit are you? What kind of man takes a drunk married woman half his age to a fucking motel room... Twice even. You don't know her or anything about either of us you homewrecking fuck. You need to stay away from my fucking wife, don't call her, lose her number and forget you ever met her. You will not come between us and you are a stupid motherfucker if you think you are. I have fought for her for almost half my life and some old fat fuck will not damage that. Do the smart thing and find someone else to take advantage of, but do not come near my fucking wife again you dickless fucking coward. Do not call her, don't even fucking think about her. She is mine and you do not know her anymore. I wish you misery you fucking piece of shit, do yourself a favor and find a nice place to lay down and die. Feel free to call me man to man if ever your little balls ever drop."
> A few months later, Hollingshead texted Jessicca saying he would kill anyone who came between them. He also texted his cousin, suggesting that his cousin had a relationship with Jessicca. Hollingshead testified at trial that he worked long hours and had no way of knowing what Jessicca was doing. The following month he sent texts to Jessicca such as "How's about you remember your vows all of which you have stomped on"; "How about you think everything that I have done for you, for us and how you

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

are continuously shitting on our marriage and throwing everything away"; and "Eight years you are okay wasting for a drunken night."

Spalding regularly played Monday-night poker with friends at a home near Hollingshead's home. Typically, they played until about 11 p.m. On Monday, April 14, 2014, they played until about 10:45 p.m. That same day, Hollingshead and Jessicca argued about her drinking, and she pushed him.

Around 11 p.m., Spalding drove into the driveway of his home where he lived with his mother Angeline. Angeline heard "tapping" and then a horn honking in the driveway. She looked out the window and saw two people attacking Spalding, who was still seated in his car. The attackers wore dark clothing, hooded sweatshirts, and white gloves. One attacker was on the driver's side of the car and the other on the passenger side. They were punching Spalding and trying to drag him out of the car. The driver's side door was open, and Spalding was kicking at an attacker. Spalding yelled for Angeline to call the police.

Angeline called 911 and went out to the porch. She flicked the light on and off and yelled at the attackers to stop. At that point Spalding was lying faceup on the driveway with his feet still in the car, and an attacker was repeatedly kicking Spalding in the face. Angeline yelled that the police were coming, and the attackers ran away.

Jennifer and Kyle L. lived across the street from Spalding. Jennifer was awakened that night by a loud sound like a car door slamming or a gunshot. She woke Kyle and heard a woman screaming. She looked through her French doors and saw fighting in Spalding's driveway. Someone was lying on the ground, and others were standing around him. She called 911, and the dispatcher said they were already aware of the incident. Jennifer also saw a car stopped on a nearby crossroad with its lights on and engine running. When the commotion ended, Jennifer saw that the car on the crossroad was gone. Kyle observed that after failed attempts to pull a person out of the car, an attacker succeeded in pulling the person out of the car. Kyle went to find his phone and call 911. When he looked across the street again, the person who had been inside the car was lying on the driveway, partially out of the car. The attackers were stomping on the head of the person lying on the driveway. Like Jennifer, Kyle saw the car parked on the crossroad with its lights on and engine running.

Spalding was deceased when a deputy sheriff and first responders arrived. He lay in a large pool of blood and brain matter around his head. There were shell casings and pieces of latex glove in the driveway. An autopsy revealed Spalding died from blunt force trauma to the head. His face was caved in. Spalding had been shot six times in the torso, right arm, and left hand, but the bullets missed major organs and did not produce significant bleeding. The gunshots were significant injuries but did not contribute to the cause of death.

Investigating officers went to Hollingshead's home and Jessicca let them in. Hollingshead had a large bandage on his left thumb and numerous abrasions on his forehead and cheeks. A search of Hollingshead's home revealed recently washed items in the washing machine, including towels, two pairs of men's underwear, two pairs of men's pants, and two dark hooded sweatshirts.

Investigators also went to Nix's home and saw a Chevy Prism parked in the driveway with blood stains inside and outside the car and a trail of blood drops from the car to the front door of the home.

A forensic expert testified it is possible to match a firearm with bullets fired from the firearm because the grooves in the barrel of the gun leave unique "tool marks" on the bullet. The expert determined that the bullets recovered from Spalding's body were shot by a gun found near the crime scene on April 16, 2014. The expert also compared casings found in the Spalding driveway to casings test fired from the recovered gun and concluded the casings were marked during firing by the same gun.

Nix's DNA was on one of the latex-glove pieces found at the scene of the homicide. On another glove piece, Nix could not be excluded as a major contributor of DNA, and two of three DNA profiles on the exterior of the glove piece were consistent with the DNA of Nix and Spalding. Hollingshead's DNA was in blood found on the inside of Nix's Chevy Prism and on the gun recovered on April 16, 2014. Blood stains on Nix's Chevy Prism contained Spalding's DNA.

Hollingshead testified at trial and denied involvement in Spalding's killing. Nix did not testify at trial. The trial court instructed the jury that a murder committed while lying in wait is first degree murder. (§ 189, subd. (a).[1])

ECF No. 24-22, pgs. 2-6.

B. **Procedural History**

1. State Court

The California Court of Appeal recited the following procedural history related to conviction and sentencing:

> The jury convicted defendants of first-degree murder with a lying-in-wait special circumstance (§§ 187, 189, subd. (a), 190.2, subd. (a)(15)) and shooting at an occupied vehicle (§ 246). As to each count, the jury found Hollingshead intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), and as to the count charging shooting at an occupied vehicle, the jury found Hollingshead was involved in the commission of a felony in which a principal was armed with a firearm (§ 12022, subd. (a)(1)). Also, as to each count, the jury found Nix was involved in a felony in which a principal was armed with a firearm (§ 12022, subd. (a)(1)).
>
> * * *
>
> The trial court sentenced Nix to life without the possibility of parole for the special circumstance first degree murder, with a consecutive term of one year for the finding that a principal was armed with a firearm. On the shooting at an occupied vehicle count, the trial court sentenced Nix to the upper term of seven years plus a consecutive term of one year for the finding that a principal was armed with a firearm, but it stayed the sentence on the shooting at an occupied vehicle count. The aggregate term of imprisonment imposed on Nix was life without the possibility of parole plus one year.

ECF No. 24-22 at 6.

///

6

The California Court of Appeal affirmed Petitioner's conviction and sentence in People v. Nix, case no. C081976 (unpublished). See ECF No. 24-22. The California Supreme Court denied direct review without comment or citation. See ECF No. 24-24. Petitioner did not file any state court post-conviction actions.

### 2. Federal Court

Petitioner commenced this federal habeas action with a pro se petition filed in the United States Court of Appeals for the Ninth Circuit and transferred to this Court on April 12, 2021. See ECF Nos. 1, 2. Petitioner filed a first amended petition on October 18, 2021. See ECF No. 7. Respondent then moved to dismiss, arguing that the third and fourth claims raised in the amended petition are barred by the one-year statute of limitations. See ECF No. 13. Respondent also argued that the fourth claim is unexhausted. See id. On September 26, 2023, the District Judge granted Respondent's motion and dismissed the third and fourth claims. See ECF No. 23. Respondent filed an answer to the first amended petition on October 10, 2023. See ECF No. 24. Petitioner has not filed a traverse.

## II. DISCUSSION

This action proceeds on Petitioner's first amended petition on the following remaining claims: (1) the trial court committed error when it failed to perform its role as "gatekeeper" of the prosecution's expert witness testimony without an appropriate hearing; and (2) there was insufficient evidence at trial to support the lying-in-wait elements of the first-degree murder conviction. See ECF No. 7, pgs. 4-6. In the answer, Respondent argues that Petitioner is not entitled to federal habeas relief on either claim. See ECF No. 25. Specifically, Respondent argues: (1) Petitioner's first claim does not raise a federal question; and (2) the state court's denial of Petitioner's claim of insufficient evidence was reasonable. See id. at 6-9.

/ / /

/ / /

/ / /

/ / /

A. **First Claim**

Petitioner claims that the trial court erred in not conducting a hearing under California Evidence Code § 402 before admitting expert testimony regarding firearm evidence. See ECF No. 7, pg. 4. The California Court of Appeal outlined the issue as follows:

> The prosecution filed a pretrial motion to admit firearm tool mark evidence. According to the prosecutor's motion, no Evidence Code section 402 hearing was necessary. Under the *Kelly-Frye* standard (*People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*); *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, 1014), tool mark evidence is admissible because a prior California Supreme Court case upheld the admissibility of such evidence. (*People v. Cowan* (2010) 50 Cal.4th 401, 470.) Once a published appellate decision has upheld the admissibility of evidence under the *Kelly-Frye* standard, there is no need to conduct a hearing on reliability unless prevailing scientific opinion has materially changed. (*People v. Venegas* (1998) 18 Cal.4th 47, 53.)
> Defendants opposed the prosecution's pretrial motion. They acknowledged that tool mark evidence is generally admissible under the *Kelly-Frye* standard, but they argued the trial court was required to hold an evidentiary hearing under Evidence Code section 402 to determine whether the tool mark identification techniques used in this case were consistent with the techniques generally accepted in the scientific community. They added: "There are also general rules of admissibility which require a determination of the relevance and reliability of the proffered evidence," referring to *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 (*Sargon*). Defendants cited a 2009 study of the National Academy of Sciences, along with other newspaper articles and press releases, for the proposition that forensic sciences often produce erroneous testimony in criminal cases. With respect to tool mark evidence, the National Academy of Sciences study suggested that comparison of tool mark evidence was, in defendants' words, "always a subjective determination, based on the expert's training and experience," and the uniqueness and reproducibility of tool marks has not been fully demonstrated.
> At a hearing on the prosecution's motion, defendants argued the evidentiary hearing was required to prevent the prosecution from admitting the expert conclusion that the gun found near the crime scene was the gun that fired the bullets at Spalding, unless a proper foundation was laid for admission of the evidence. The trial court granted the prosecution's motion to admit the tool mark evidence and denied defendants' request for an evidentiary hearing. The trial court noted that it would be necessary for the prosecution to lay a proper foundation for admission of the expert's conclusions before the expert would be allowed to state the conclusions.

ECF No. 24-22, pgs. 10-11.

///
///
///

8

1   A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a
2   transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083,
3   1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available
4   for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see
5   also Estelle v. McGuire, 502 U.S. 62 (1991); Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987);
6   Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to
7   try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).   In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict.  See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

In addressing this claim under state law, the California Court of Appeal observed:

> But even if we were to conclude that the trial court erred by admitting the tool mark evidence without holding an evidentiary hearing, it is not reasonably probable defendants would have obtained a more favorable result if the evidence had not been admitted. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Despite Hollingshead's denial in his testimony at trial, the evidence that defendants were the assailants who

9

>killed Spalding was overwhelming. They would have been convicted with or without the tool mark evidence.

ECF No. 24-22, pg. 13.

Here, Petitioner has failed to establish that he is entitled to federal habeas on his "gatekeeper" claim. Under California law, evidence obtained using a new scientific technique is admissible only if the proponent of the evidence establishes at a hearing that the relevant scientific community generally accepts that technique as reliable. See People v. Cordova, 62 Cal. 4th 104, 127 (2015). However, once a published appellate opinion affirms a trial court ruling admitting evidence obtained through that technique, proof of such acceptance is not necessary. See id. Toolmark evidence is admissible based on a previous California Supreme Court case in which the court upheld the admissibility of such evidence. See People v. Cowan, 50 Cal. 4th 401, 470 (2010). This Court is bound by the state court's conclusion that the trial court was not required to hold an evidentiary hearing to determine the reliability of toolmark evidence.

Moreover, to the extent Petitioner's claim implicates fundamental due process rights, the Court agrees with the state court that any error was harmless because it would not have had a substantial and injurious effect on the outcome of the trial. As the state appellate court observed, evidence of guilt was overwhelming even absent toolmark expert testimony.

**B.   Second Claim**

Petitioner claims that the evidence was insufficient to support the lying-in-wait finding. See ECF No. 7, pg. 4. Specifically, Petitioner claims that there was insufficient evidence of: (1) a substantial period of waiting; (2) concealment of purpose; and (3) concealment of his person resulting in a surprise attack. See id. In rejecting this claim, the California Court of Appeal stated as follows:

>When reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) "If the circumstances reasonably justify the trier of fact's findings,

reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Ibid.*)

\* \* \*

### A

Defendants assert the evidence was insufficient to establish there was a substantial period of waiting before they attacked and killed Spalding. They base this assertion on the prosecutor's closing argument. Among other things, the prosecutor argued Hollingshead knew that Spalding regularly played poker on Monday nights at a nearby home. Defendants counter that there was no evidence of the distance between the poker game and Hollingshead's home, whether Hollingshead could see the house where the game was played or who attended, whether Hollingshead knew what Spalding looked like, or whether Hollingshead was home on prior poker nights.

But as the trial court instructed the jury, an attorney's argument does not constitute evidence. Rather, substantial evidence indicated defendants had been waiting for Spalding when he got home even if they did not know where he had been. Hollingshead knew Spalding's address and had been to his home before. He had previously texted Spalding that he wished him misery. He texted Jessicca that he would kill anyone who came between them. The record shows that on the night of the ambush, defendants dressed in dark clothing with hoods, put on gloves, armed themselves, went to Spalding's home, and left Nix's Chevy Prism on a nearby crossroad with the engine running. When Spalding arrived in his driveway, but before he could get out of the car, defendants attacked him. From this evidence the jury could reasonably infer that defendants had been waiting for Spalding to arrive home so they could attack him while he was vulnerable.

### B

Defendants argue there was no concealment of purpose because Hollingshead had previously threatened Spalding. But the texted threat had been sent months earlier, and it included an invitation for a man-to-man call. There is no evidence of continuing confrontation between Hollingshead and Spalding, and no evidence defendants gave Spalding any warning of their specific ambush plan. On this record, the jury could reasonably infer that Spalding had no sense he would be ambushed on the night in question. While concealment of presence is not necessary for concealment of purpose, it can be reasonably inferred from the evidence that defendants in this case concealed their purpose by concealing their presence and successfully surprising their victim while he was vulnerable.

### C

Defendants assert that because Nix's car lights were on and the engine was running, the jury could not infer that defendants concealed their persons and executed a surprise attack. But defendants did not park Nix's car in Spalding's driveway or in front of his house, like regular visitors might; they left the car on a crossroad around the corner. The jury could reasonably infer that Spalding did not notice the car on the crossroad and did not know defendants were on his property until he was attacked.

///

///

11

> Because there was sufficient evidence to support the first-degree murder conviction and the special circumstance finding with respect to lying-in-wait, defendants' due process argument asserting insufficient evidence also lacks merit. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

ECF No. 24-22, pgs. 7-9.

Respondent argues that Petitioner cannot surmount the burden to show that no fair-minded jurist could agree with the state court's decision. See ECF No. 25 at 9. Specifically, Respondent contends:

> Here, the state court determined that the evidence was sufficient to support the lying-in-wait element for the first-degree murder conviction and special circumstance finding, including that there was a substantial period of waiting, there was concealment of purpose, and there was concealment of Petitioner's person resulting in a surprise attack. Looking at the evidence in the light most favorable to the prosecution (as detailed by the state court), a fair-minded jurist could agree that substantial evidence supported the conviction.

ECF No. 25, pg. 12.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[2] Under Jackson, the Court must review the entire record when the sufficiency of the evidence is challenged on habeas. See id. It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993). The federal

---

[2] Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

12

habeas court determines sufficiency of the evidence in the context of the substantive elements of the criminal offense, as defined by state law. See Jackson, 443 U.S. at 324 n.16.

As the Supreme Court has held, federal habeas relief on a claim of insufficient evidence requires the petitioner to overcome a high bar. The Supreme Court stated:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) *(per curiam)*. And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett,* 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

Coleman v. Johnson, 566 U.S. at 650, 651 (2012) (per curiam).

At the outset, the Court finds that the California Court of Appeal applied the correct federal legal standard based on the Jackson rule announced by the United States Supreme Court. This Court, therefor, reviews to determine whether the state court's determination was based on an unreasonable application of that standard.

The issue before this Court is whether, based on the evidence presented at trial and viewed in the light most favorable to the prosecution, a rational jury could agree that substantial evidence supported the conviction. Petitioner was convicted of first-degree murder under California Penal Code §§ 187(a) and 189(a) with a lying-in-wait special circumstance under California Penal Code § 190.2(a)(15) and shooting at an occupied vehicle under California Penal Code § 246.

Section 187(a) provides that murder is the unlawful killing of a human being or fetus with malice aforethought. See Cal. Penal Code § 187(a). Regarding lying-in-wait, § 189(a) states that murder perpetrated by means of lying-in-wait is murder of the first degree. See Cal. Penal Code § 189(a). Section 190.2(a)(15) states that the penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without a

possibility of parole if the defendant intentionally killed the victim by means of lying-in-wait. See Cal. Penal Code § 190.2(a)(15). Section 246 provides "any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited house-car, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year." See Cal. Penal Code § 246.

Petitioner's contention focuses on the elements of lying-in-wait. The state court concluded that the evidence was sufficient to support the jury's lying-in-wait findings. The lying-in-wait special circumstance requires proof of an intentional murder committed under circumstances that include: (1) concealment of purpose; (2) a substantial period of watching and waiting for an opportune time to act; and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage. See Cal. Penal Code § 190.2(a)(15).

This Court agrees with the state court that, when viewed in the light most favorable to the prosecution, the evidence was sufficient to allow a rational jury to convict. A reasonable jury could conclude from the facts provided at trial that there was a concealment of purpose. Petitioner argues that, because Defendant Hollingshead had threatened the decedent months earlier, there was no concealment of purpose. See ECF No. 24-22 at 8. However, there is no evidence of ongoing conflict between the decedent and Defendant Hollingshead. See id. The state court found that neither Petitioner nor Defendant Hollingshead warned the decedent of their plan to ambush him on the night in question. See id. at 9. A jury could reasonably infer from the evidence that Petitioner and Defendant Hollingshead concealed their purpose by hiding and successfully surprising the decedent before he could exit his vehicle. See id. This evidence satisfied the first element – concealment of purpose.

///

///

///

    A reasonable jury could also conclude that Petitioner and Defendant Hollingshead were waiting for the decedent when he got home. Defendant Hollingshead knew the decedent's address and had been to his home before. The record shows that, on the night of the ambush, Petitioner and Hollingshead wore dark clothing and armed themselves, went to the decedent's home, and left Petitioner's Chevy Prism on a nearby crossroad with the engine running. See id. Petitioner and Defendant Hollingshead attacked the decedent before he could get out of his car. See id. This evidence satisfied the second element – a substantial period of watching and waiting for an opportune time to attack.

    Lastly, a reasonable jury could conclude that there was a surprise attack on the decedent and that Petitioner and Defendant Hollingshead had an advantage. Petitioner argues that the car lights were on, and the engine was running; therefore, a jury could not infer that a surprise attack was executed. However, Petitioner's car was parked on a crossroad around the corner. It can be inferred that the decedent did not notice the car on the crossroad and did not know Petitioner and Defendant Hollingshead were on his property until he was attacked. This satisfies the last element – a surprise attack on an unsuspecting victim.

    A reasonable jury could consider the evidence as a whole to conclude that there was sufficient evidence to support each element of lying-in-wait for the first-degree murder conviction and the special circumstance finding. Given the facts recited by the state court, the Court finds that the state court's determination was not based on an unreasonable application of clearly established federal law.

///
///
///
///
///
///
///
///

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's amended petition for a writ of habeas corpus, ECF No. 7, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 30, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE